**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
                                    :
KELVIN VICK,                        :
                                    :   Civil Action No. 06-5301 (RMB)
            Petitioner,             :
                                    :
     v.                             :        **O P I N I O N**
                                    :
LYDELL SHERRER, et al.,             :
                                    :
            Respondents.            :
_____ :


**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>                Counsel for Respondents
Kelvin Vick                         James F. Smith
#299464/#289074C                    Atlantic Co. Prosecutor's Off.
Northern State Prison               4997 Unami Boulevard
168 Frontage Road                   Mays Landing, NJ 08330
Newark, NJ 07114

**BUMB**, District Judge

     Petitioner Kelvin Vick, a prisoner currently confined at
Northern State Prison in Newark, New Jersey, has submitted a
petition for a writ of habeas corpus pursuant to 28 U.S.C. §
2254.  The respondents are Administrator Lydell B. Sherrer and
the New Jersey Attorney General.

     For the reasons stated herein, the Petition must be denied.

## BACKGROUND

On June 22, 1999 in the Superior Court of New Jersey, Atlantic County, Petitioner pled guilty to first-degree aggravated manslaughter after admitting at his plea colloquy that he knew the victim and had "beat[en] him to death in his bed . . . [w]ith a two-by-four . . . [by striking him a]bout the head."

On July 15, 1999, Petitioner was sentenced, pursuant to the plea agreement, to a term of twenty years, subject to the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2.  Petitioner was advised by the court that he would also have to serve a period of five years of parole following his release.

Petitioner appealed the sentence and the guilty plea, and on May 9, 2002, the Superior Court of New Jersey, Appellate Division ("Appellate Division") affirmed the conviction and sentence.  The Supreme Court denied certification on December 10, 2002.

In August of 2003, Petitioner filed a state petition for post-conviction relief ("PCR").  Counsel filed a supplementary petition in December of 2004.  Petitioner alleged that he was denied the effective assistance of counsel in that counsel gave him misinformation and advice, failed to advise him of all the penal NERA ramifications, failed to advise him that he was entitled to a jury trial on the application of the NERA sentence, and failed to argue all issues to both the trial and appellate courts.

2

The trial court denied relief on April 1, 2005, after an evidentiary hearing.  The Appellate Division affirmed the denial of relief on June 22, 2006, and the Supreme Court of New Jersey denied certification on October 12, 2006.  According to the Appellate Division in its Opinion affirming the PCR court:

> The PCR judge, who had also been the judge who had taken defendant's plea and who had imposed sentence on him, convened a hearing on the PCR petition.  Defendant testified that his trial lawyer assured him that once he had served eighty-five percent of the sentence, he would "be finished" and that neither the attorney nor the judge had alerted him to the NERA five-year parole requirement, which he referred to as the "parole tail." He testified that he first became aware of the parole tail when he subsequently received a letter from the Parole Board.  He further testified that had he been aware of the additional parole requirement, he would have rejected the plea offer and would have insisted on proceeding to trial.  When the judge read to him the portion of the sentencing transcript in which the parole period was discussed, defendant could not explain why he did not object or express surprise.  Nor could he explain his earlier testimony that he had never been told about the parole tail prior to receiving the letter from the Parole Board.
>
> Defendant's trial counsel also testified at the PCR hearing.  He testified that, at the time of defendant's plea and sentence, defendant was facing a life term for the first-degree murder charge, to which it appeared that NERA would apply and that he had succeeded in having the prosecutor agree to accept a plea to the aggravated manslaughter term with a maximum twenty-year sentence instead.  He testified that he could not specifically recall his discussions with defendant but testified that because NERA was a new statute at the time of defendant's plea, he would have discussed with defendant, as with all affected clients, its two critical features, which were the mandatory period without parole and the additional parole supervision, or parole tail, requirement.  He recalled that because these two new aspects represented such a major change in sentencing, he and the other public

3

defenders were specifically advised about them and were
instructed to be careful about them.  He also recalled,
therefore, making it his practice to discuss both
aspects of the law with all defendants facing a NERA
sentence.

See Respondents' Appendix ("Ra") at pp. 5-6.

Between the filing of the Appellate Division opinion and the
Supreme Court's denial of certification on the PCR petition,
Petitioner forwarded to his attorney a "signed last page of the
pro se brief that [he] submitted to [his attorney's office] back
on the date in February, along with the certification by
defendant."  (Ra 123).  The attachment to the letter revealed
that by letter dated February 15, 2006, Petitioner had asked his
attorney to raise an argument for re-sentencing according to
State v. Natale, which Petitioner states was decided after he
began his appeal.  (Ra 124).  Petitioner told the attorney that
"in light of two recent US Supreme Court decisions decided late
2004 and early 2005, [he] can challenge the NERA statute on
constitutional grounds."  Petitioner stated that these arguments
"must be part of my appeal."  (Ra 124).

It is unclear whether or not this pro se brief was ever
submitted to the New Jersey Supreme Court during the pendency of
Petitioner's petition for certification.  However, it appears
that Respondents believe it was so produced.  See Respondents'
Brief, pp. 4-5 (stating: "The claims asserted in these paragraphs
were first raised by petitioner in a pro se brief submitted to

4

New Jersey's Supreme Court as his petition for certification was pending in that court.").

Petitioner filed this habeas petition on November 2, 2006. On December 21, 2006, he was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). An Order to Answer was issued and Respondents filed a Response to the Petition on March 30, 2007, with exhibits to the response filed on April 2, 2007.

Petitioner asserts the following claims in this habeas petition:

- Ground One: Petitioner seeks relief from the judgment entered on July 15, 1999 on the ground that he was denied effective assistance of counsel.
- Ground Two: Petitioner was subject to an illegal sentence as the statutory maximum increased by two years in violation of the Constitution and state law.
- Ground Three: New Jersey's NERA is unconstitutional.
- Ground Four: New Jersey's NERA violates United States Supreme Court precedent in United States v. Booker.

Respondents counter that only Ground One has been exhausted in the state courts, as required pursuant to 28 U.S.C. § 2254(b)(1)(A). Respondents assert that because the trial court and Appellate Division did not have the opportunity to consider these additional claims, the claims were not exhausted, and the petition must be dismissed. Alternatively, Respondents argue that none of Petitioner's claims concerns a state court decision that was contrary to, or involved an unreasonable application of, clearly established federal law.

5

This Court finds that Petitioner's claims are clearly meritless.  Thus, the petition will be denied.[1]

<u>**DISCUSSION**</u>

**A.    <u>Standards Governing Petitioner's Claims.</u>**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert.</u> <u>denied</u> 534 U.S. 919 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(citing <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

---

[1]  Although a petition for writ of habeas corpus may not be granted if Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding Petitioner's failure to exhaust his state court remedies.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Lambert v. Blackwell</u>, 387 F.3d 210, 260 n.42 (3d Cir. 2004); <u>Lewis v. Pinchak</u>, 348 F.3d 355, 357 (3d Cir. 2003).

(d) An application for a writ of habeas corpus on
behalf of a person in custody pursuant to the judgment
of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary
to, or involved an unreasonable application
of, clearly established Federal law, as
determined by the Supreme Court of the United
States; or

(2) resulted in a decision that was based on
an unreasonable determination of the facts in
light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000), the

Supreme Court explained the application of § 2254(d)(1).  The

Court analyzed subsection 1 as two clauses:  the "contrary to"

clause and the "unreasonable application" clause.  The Court held

that under the "contrary to" clause, "a federal court may grant

the writ if the state court arrives at a conclusion opposite to

that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme]

Court has on a set of materially indistinguishable facts."  <u>Id.</u>

A federal court may grant the writ under the "unreasonable

application" clause, if "the state court identifies the correct

governing legal principle from [the Supreme] Court's decisions

but unreasonably applies that principle to the facts of the

prisoner's case."  <u>Id.</u> at 413.  Habeas relief may not be granted

under the "unreasonable application" clause unless a state

7

court's application of clearly established federal law was
objectively unreasonable; an incorrect application of federal law
alone is not sufficient to warrant habeas relief.  See id. at
411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000),
cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI
Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v.
Brennan, 528 U.S. 824 (1999).  Thus, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court
precedent.  See Werts, 228 F.3d at 197; see also Jacobs v. Horn,
395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must
confine its examination to evidence in the record.  See Abu-Jamal
v. Horn, 2001 WL 1609690 at *12 (E.D. Pa. December 18, 2001).  In
addition, the state court record should be reviewed to assess the
reasonableness of the state court's factual determinations.  See
id.  Finally, federal courts are required to apply a "presumption
of correctness to factual determinations made by the state
court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of
Appeals for the Third Circuit has ruled that this presumption of
correctness can be overcome only by clear and convincing
evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.
2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-

supported and subject to the presumption of correctness is not unreasonable." Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review." Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001). A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**B.** **Petitioner's Ineffective Assistance of Counsel Claim (Ground One).**

Petitioner argues that he was denied the effective assistance of counsel because counsel gave him misinformation and

9

advice, failed to advise him of the NERA ramifications, failed to advise him that he was entitled to a jury trial on the application of the NERA sentence, and failed to argue "all the issues" to both the trial and appellate courts. See Petition, ¶ 12(A).

Petitioner raised these issues in his PCR petition. As noted, the PCR judge held a hearing in which Petitioner and his trial counsel testified. The PCR judge found that counsel's testimony, that he had advised Petitioner about the consequences of NERA prior to the plea, was more credible than Petitioner's testimony that he was not advised about the "parole tail" and would not have taken the plea had he been so advised. The Appellate Division affirmed the PCR judge's findings.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001). Counsel's errors must have been "so serious as to

deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense. See Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

is a probability sufficient to undermine confidence in the outcome." Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence.  See id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n.10 (E.D. Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

The Strickland standards also apply to guilty pleas alleged to be the result of ineffective assistance of counsel.  See Hill v. Lockhart, 474 U.S. 52 (1985).  To prevail on an ineffective

assistance claim in a guilty plea context, a petitioner must show: (1) counsel's performance relating to the plea was deficient; (2) the deficient performance prejudiced Petitioner's case, because there was a reasonable probability that but for counsel's errors, the defendant would <u>not</u> have pled guilty, and would have gone to trial.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687-88; <u>Hill</u>, 474 U.S. at 59.

In this case, Petitioner has demonstrated neither prong of <u>Strickland</u>.  First, a review of the record, including the testimony at the PCR hearing, reveals that Petitioner was advised by counsel of the consequences of NERA prior to pleading guilty. The factual findings by the state courts that counsel was not deficient in this respect were not unreasonable in light of the evidence presented.  This Court will not disturb the findings of the state courts, as the record of the proceedings clearly does not demonstrate deficient performance.

Additionally, with regard to the second prong of <u>Strickland</u>, the state courts found that Petitioner's claim that he would not have accepted the plea deal had he known about the parole tail was incredible.  Petitioner has not demonstrated that the state court factual findings based on Petitioner's testimony at the PCR hearing were unreasonable in light of the evidence presented.

Further, Petitioner's claims that the NERA issues, or "all of the issues" were not raised on direct appeal are without merit

13

as the record reflects that Petitioner's claim regarding the NERA issues and the "parole tail" were presented to the Appellate Division in the Excessive Sentencing Oral Arguments on May 8, 2002.

Petitioner is not entitled to habeas relief for his ineffective assistance of counsel claims.

**C.   Petitioner's Sentencing Claims (Grounds Two through Four).**

In Ground Two, Petitioner argues that he was illegally sentenced "as the statutory maximum increased by two years in violation of the United States Constitution's Sixth Amendment." In Ground Three, Petitioner argues that New Jersey's "No Early Release Act" violates the Fifth and Sixth Amendments of the Constitution.   Finally, in Ground Four, Petitioner argues that NERA violates precedent set by the United States Supreme Court in United States v. Booker.

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), pursuant to the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the

14

maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. at 302 (internal quotations omitted).  Most recently, in United States v. Booker, 543 U.S. 220 (2005), the Supreme Court applied the rule of Apprendi to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

Under New Jersey's Code of Criminal Justice, as in effect at the time of Petitioner's sentencing, a defendant cannot be sentenced to a period of imprisonment greater than the presumptive term for the crime he committed, unless the judge finds one or more statutory aggravating factors.  See N.J.S.A. 2C:44-1(f)(1).  Petitioner pled guilty to first-degree aggravated assault, punishable by a term of imprisonment of between ten and thirty years, with a presumptive term of twenty years.  See N.J.S.A. 2C:11-4c; N.J.S.A. 2C:43-6a.

In State v. Natale, 184 N.J. 458 (2005), the Supreme Court of New Jersey evaluated the constitutionality of the New Jersey sentencing scheme in light of the Apprendi line of cases.

> Our Code provisions make clear that, before any judicial factfinding, the maximum sentence that can be imposed based on a jury verdict or guilty plea is the presumptive term.  Accordingly, the "statutory maximum" for Blakely and Booker purposes is the presumptive sentence.

Natale, 184 N.J. at 484.  Because the Code's system allows for sentencing beyond the statutory maximum presumptive term, the

Supreme Court of New Jersey found the system unconstitutional and determined that the appropriate remedy would be to follow the lead of <u>Booker</u> and abolish the presumptive terms.  "Without presumptive terms, the 'statutory maximum' authorized by the jury verdict or the facts admitted by a defendant at his guilty plea is the top of the sentencing range for the crime charged, <u>e.g.</u>, ten years for a second-degree offense."  <u>Natale</u>, 184 N.J. at 487 (citation omitted).

The Court of Appeals for the Third Circuit generally has held that the rules announced in the <u>Apprendi</u> line of cases are not applicable retroactively to cases on collateral review.  <u>See generally In re Olopade</u>, 403 F.3d 159 (3d Cir. 2005) (finding that the decision of the Supreme Court in <u>Booker</u> does not apply retroactively to cases on collateral review); <u>United States v. Swinton</u>, 333 F.3d 481 (3d Cir.), <u>cert. denied</u>, 540 U.S. 977 (2003) (holding that <u>Apprendi</u> does not apply retroactively to cases on collateral review); <u>In re Turner</u>, 267 F.3d 225 (3d Cir. 2001) (holding that <u>Apprendi</u> does not apply retroactively to cases on collateral review); <u>see also United States v. Price</u>, 400 F.3d 844, 849 (10th Cir.), <u>cert. denied</u>, 546 U.S. 1030 (2005) (<u>Blakely</u> does not apply retroactively to cases on collateral review).  Similarly, the Supreme Court of New Jersey has held that the rule it announced in <u>Natale</u> is applicable retroactively only to cases in the direct appeal pipeline as of the date of

16

that decision.  See Natale, 184 N.J. at 494 (holding that
"'Pipeline retroactivity'-applying our holding to defendants with
cases on direct appeal as of the date of this decision and to
those defendants who raised Blakely claims at trial or on direct
appeal-best balances principles of fairness and repose").  In
this case, Petitioner's case was not in the direct appeal
pipeline as of the 2005 Natale decision, but was in the
collateral review pipeline at the time.

In any event, it does not appear that the trial court
violated the rule of Apprendi/Blakely.  This is not a situation
in which a sentence was imposed, on the basis of judicial fact-
finding, in excess of the statutory maximum for Apprendi and
Blakely purposes.  Petitioner received the presumptive twenty-
year sentence permitted without additional fact-finding.  There
has been no violation of Petitioner's Sixth Amendment right to
trial by jury.  Petitioner is not entitled to relief on this
claim.

Furthermore, as applied to Petitioner's sentence, a federal
court's ability to review state sentences is limited to
challenges based upon "proscribed federal grounds such as being
cruel and unusual, racially or ethnically motivated, or enhanced
by indigencies."  See Grecco v. O'Lone, 661, F. Supp. 408, 415
(D.N.J. 1987) (citation omitted).  Thus, a challenge to a state
court's discretion at sentencing is not reviewable in a federal

habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  For example, in Gryger v. Burke, 334 U.S. 728, 731 (1948), the Supreme Court rejected Petitioner's due process challenge to a life sentence imposed by the Pennsylvania courts.  Petitioner argued that the sentencing judge mistakenly regarded as mandatory a sentence which was discretionary. The Supreme Court held:

> We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied. We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

Id. at 731.

Here, Petitioner was sentenced to the presumptive term of imprisonment for the crime to which he admitted his guilt. Petitioner has not provided this Court with any justification to grant habeas relief and upset the state court proceedings.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Accordingly, no certificate of appealability will issue.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: September 12, 2007